# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1308

No. 18-1364

_____

Mark Merfeld; Debra Merfeld; Merfeld Transport, Inc.

*Plaintiffs - Appellants/Cross-Appellees*

v.

Dometic Corporation

*Defendant - Appellee/Cross-Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Waterloo

_____

Submitted: June 12, 2019
Filed: October 17, 2019

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

This diversity action arose from a fire in 2014 that extensively damaged a storage building and personal property owned by Mark and Debra Merfeld, including a 2003 Forest River Cardinal RV the Merfelds purchased in 2005 and stored in the building. The Merfelds sued Dometic Corporation ("Dometic"), alleging that the fire was caused by a defective Dometic refrigerator installed in the RV when it was

manufactured by Forest River. The district court[1] granted Dometic summary judgment, concluding that, because Dometic sold but did not manufacture, design, or assemble the refrigerator, it is immune from liability under Iowa Code § 613.18, which provides in relevant part:

> 1. A person who is not the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is:
>
> > a. Immune from any suit based upon strict liability in tort or breach of implied warranty of merchantability which arises solely from an alleged defect in the original design or manufacture of the product.

The Merfelds appeal, arguing that genuine issues of material fact exist as to whether Dometic was the manufacturer or the designer of the RV's refrigerator. Dometic cross appeals the district court's decision not to dismiss the Merfelds's claims for spoliation of evidence. Reviewing the grant of summary judgment *de novo* and the evidence in the light most favorable to the Merfelds, we affirm. See Robinson v. Terex Corp., 439 F.3d 465, 467 (8th Cir. 2006) (standard of review).

## I. The Negligent Manufacturing Claim.

It is undisputed that Dometic, a North American company, purchased refrigerators manufactured in Sweden by Dometic AB, a Swedish company, for resale in North America until manufacturing operations were shifted to Dometic's United States facility in 2009. The Merfelds' attorney submitted a Forest River invoice dated June 3, 2002 reflecting the initial sale of the Forest River Cardinal RV. The invoice listed an eight cubic foot refrigerator as one RV option, with a hand-written notation

_____

[1]The Honorable Leonard T. Strand, Chief Judge of the United States District Court for the Northern District of Iowa.

of a model number that matched a model included in a 2006 recall of certain Dometic refrigerators.[2] Thus, the district court concluded, Dometic was "not the manufacturer" of this product within the meaning of Iowa Code § 613.18(1)(a). The Merfelds contend the court erred in granting summary judgment dismissing their negligent manufacturing claim.

First, the Merfelds argue, Dometic's 2006 representation to the National Highway Traffic Safety Administration that it had filed a notice of potential safety-related defect regarding refrigerators which it "manufactured and sold in the United States," and its 2007 notice to customers warning of a defect in certain refrigerators "it manufactured" and advising that a "rework kit" would soon be available, were admissions creating a genuine fact issue as to whether Dometic manufactured the refrigerator at issue. The district court concluded that those statements were not sufficient to create a genuine issue of material fact absent "evidence that Dometic actually had a role in the manufacturing process before 2009." Given the responsibilities of Dometic as U.S. distributor in a safety-related recall of imported products, we agree.

The Merfelds further argue that, even if Dometic was not the *actual* manufacturer, it cannot claim § 613.18 immunity if a jury finds it was the *apparent* manufacturer of the refrigerator. The apparent manufacturer doctrine arose before the doctrine of strict product liability and is reflected in Restatement (Second) of Torts § 400: "One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." See generally Hebel v. Sherman Equip., 442 N.E.2d 199, 200-02 (Ill. 1982). More than fifty years ago,

---

[2]In the district court, Dometic challenged the authenticity of and foundation for the invoice and the hand-written notation. As the document was submitted by the non-moving party, we will treat it as part of the summary judgment record on appeal.

the Supreme Court of Iowa said that Restatement § 400 was adopted in earlier cases. Tice v. Wilmington Chem. Corp., 141 N.W.2d 616, 628 (Iowa 1966).

"The Iowa Supreme Court has never revisited the apparent manufacturer doctrine, and it is . . . unclear if it even remains cognizable under Iowa law," Allianz Global Corp. v. Watts Regulator Co., No. 4:14-CV-00253, 2016 WL 4435094, at *5 n.2 (S.D. Iowa Apr. 7, 2016). Many jurisdictions have declined to adopt the doctrine. Notably, some courts have concluded that the broad Restatement doctrine is inconsistent with state statutes such as Iowa Code § 613.18(1)(a) that limit the liability of a non-manufacturing middleman for negligent manufacturing claims. See Bornsen v. Pragotrade, LLC., 804 N.W.2d 55, 59-62 (N.D. 2011) (North Dakota law); Rushing v. Ferlage Marine Co., No. 3:08-CV-00531, 2011 WL 4538075, at *3 (W.D. Ky. Sept. 29, 2011) (Kentucky law). Moreover, the facts in Tice and the earlier cases cited presented factually strong claims for manufacturer liability.

The district court concluded that the apparent manufacturer doctrine "is not viable under Iowa law" because the plain meaning of the word "manufacturer" in Iowa Code § 613.18 "does not encompass a non-manufacturer that holds itself out as being the manufacturer." We are inclined to agree, but this unresolved question of Iowa law is not free from doubt. However, even if the Supreme Court of Iowa would preserve some role for the doctrine in negligent manufacturing cases, we conclude that the Merfelds failed to provide sufficient evidence showing that Dometic held itself out to the purchasing public as the manufacturer of the refrigerator at issue.

"The rationale for imposing liability on the apparent manufacturer [is that a] vendor who, through its labeling or advertising of a product, caused the public to believe that it was the manufacturer and to buy the product in reliance on the vendor's reputation and care in making it, [is] estopped to deny its identity as the manufacturer." Hebel, 442 N.E.2d at 201. Here, the Forest River invoice did not disclose that a Dometic refrigerator was included in the RV. The refrigerator was

destroyed in the fire so there is no evidence that its vendor or even its brand was apparent to the RV purchaser. Both Mr. and Mrs. Merfeld testified they were unaware of the brand of refrigerator in the RV and had never heard of Dometic Corporation prior to the fire. The Merfelds did not argue below -- and do not argue on appeal -- that they relied on the Dometic brand or on Dometic's reputation in purchasing an RV that included this refrigerator. Instead, they rely solely on communications made by Dometic in connection with a recall of defective Dometic AB refrigerators years after they purchased the refrigerator at issue.[3] As in Sherman v. Sunsong America, Inc., "there [was] no evidence that the Plaintiffs believed or relied upon any brand name, apparent or not, in choosing the [product]." 485 F. Supp. 2d 1070, 1079-80 (D. Neb. 2007) (applying Nebraska law). Accordingly, even if the apparent manufacturer doctrine retains vitality under Iowa law, the Merfelds failed to create a genuine issue of material fact that it applies in this case.

## II. The Negligent Design Claim.

Section 613.18(1)(a) provides that a product seller "who is not the assembler, designer, or manufacturer" is immune from liability for defects in the product's "original design or manufacture."[4] The Merfelds argue the district court erred in granting summary judgment dismissing their negligent design product defect claim because a reasonable jury could find, based on the deposition testimony of Patrick McConnell, Dometic's Director of Engineering, that he had "some responsibility" for the design of refrigerators manufactured by Dometic AB in Sweden. McConnell

---

[3]Dometic has identified Dometic AB as the actual manufacturer of the refrigerator throughout this litigation.

[4]This 1986 statute applies to "strict liability in tort" claims. The Supreme Court of Iowa later eliminated the former distinction between strict liability and negligence claims in design defect cases. See Wright v. Brooke Grp. Ltd., 652 N.W.2d 159, 169 (Iowa 2002). Like the parties and the district court, we assume the statute applies to a design defect claim under Wright.

testified that he identified North American safety standards for the Dometic AB design team in Sweden, reviewed sample refrigerators sent by Dometic AB to ensure they complied with those safety standards, and attended "aesthetic design meetings" in Sweden as an "observer" and addressed how aesthetic "inputs or requests" from Dometic's North American customers "might affect any of the safety requirements."

As the district court recognized, the first issue is the meaning of the term, "the designer," in § 613.18(1), an issue the Supreme Court of Iowa has not addressed. The "some responsibility" standard urged by the Merfelds has been adopted by both Iowa district courts. See Allianz Global Corp. v. Watts Regulator Co., No. 4:14-CV-00253, 2016 WL 4435094 at *5 (S.D. Iowa Apr. 7, 2016), citing dicta from Stoffel v. Thermogas Co., 998 F. Supp. 1021, 1033 (N.D. Iowa 1997). Applying that standard, the district court compared the defendant's participation in product design in Allianz Global and in Nationwide Agribusiness Ins. Co. v. SMA Elevator Const. Inc., 816 F. Supp. 2d 631, 648 n.5 (N.D. Iowa 2011). The court concluded that "McConnell's testimony reflects a level of involvement . . . that is . . . more significant than merely [a purchaser] providing specifications [to the manufacturer]."

In our view, the "some responsibility" standard does not find support in the language of § 613.18(1). McConnell's role was to communicate to the Dometic AB design team in Sweden the North American safety standards that would apply to products purchased by Dometic for resale in North America. This did not make Dometic "the designer" of the product. McConnell was "simply providing the information any purchaser would provide to get a product designed to meet its requirements." Nationwide, 816 F. Supp. 2d at 648 n.5. Other courts have construed similar statutes as granting immunity to all but "actual manufacturers or designers." Boyce v. Gregory Poole Equip. Co., 605 S.E.2d 384, 388 (Ga. App. 2004).

We are uncertain how the Supreme Court of Iowa would define the term, "the designer," in § 613.18(1). Accordingly, we turn to the alternative ground on which

the district court based its decision to grant summary judgment on the negligent design claim. In Kolarik v. Cory International Corp., 721 N.W.2d 159 (Iowa 2006), the Supreme Court of Iowa considered whether a domestic company that imported, repackaged, and sold Spanish olives was entitled to § 613.18(1)(a) immunity because it was not the "assembler" of olives that were alleged to have been defectively pitted and stuffed by the seller's Spanish suppliers. In applying the statute to bar plaintiff's strict liability claim, the court stated that the assemblers' immunity provided in section 613.18(1)(a) "is aimed at those situations in which an assembling process has *some causal connection* to a dangerous condition in the product that gives rise to a strict-liability claim." Id. at 162 (emphasis added). Applying this reasoning, the district court granted Dometic immunity from the Merfelds' negligent design claim because "the alleged defect in this case, according to plaintiffs' experts, relates to the refrigerator's boiler tube," and there is no evidence that McConnell's limited involvement in design-related activities related in any way to the boiler tubes, or that Dometic had any role in designing the boiler tube.

On appeal, the Merfelds first argue the district court erred in applying the causal connection standard in Kolarik because Kolarik was an assembler case, and the statute explicitly limits the liability of assemblers if a causal connection is lacking. See § 613.18(2). However, the Iowa Supreme Court's opinion in Kolarik never mentioned § 613.18(2). Rather, it held that the immunity in § 613.18(1)(a) should apply to defendants who "did not contribute to the condition that underlies plaintiff's product-liability claim." 721 N.W.2d at 162. The district court concluded that "the same concept logically applies to one who has some role in the design process." Absent some contribution to the product's dangerous condition, a seller has no negligent design liability. We agree.

The Merfelds further argue that the district court erred by focusing its analysis from Kolarik on a component of the Dometic refrigerator, the boiler tube. If the focus is placed on the commercial product rather than on a component part, they argue,

McConnell's testimony establishes that "Dometic definitely had sufficient design input related to" their damages. But the Merfelds point to no evidence in the summary judgment record establishing a causal connection between Dometic's alleged design input and the dangerous condition in the product that gives rise to their claim. Essentially, they argue that *any* design input is sufficient to remove a wholesaler, retailer, distributor, or other seller from the immunity provided by § 613.18(1)(a). For example, their contention would subject a retail supplier of farm implements to negligent design liability for a defective tractor clutch if it had requested the manufacturer to include an AM/FM radio in the cab. We reject this contention as contrary to the plain language of § 613.18(1)(a) and to the Supreme Court of Iowa's analysis of the statute in Kolarik. Accordingly, we agree with the district court that Dometic is entitled to summary judgment on the Merfelds' negligent design claim.

Because the district court did not err in granting Dometic's motion for summary judgment, we need not address the sanctions issue raised in Dometic's cross-appeal. The judgment of the district court is affirmed.

_____